IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM S. MILLS, Ancillary Administrator of the Estate of Aaron Lorenzo Dorsey, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:12CV447 |
| DUKE UNIVERSITY, LARRY CARTER, and JEFFREY LIBERTO, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a Motion to Dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. #17], by Defendants Duke University and Duke University Police Officers Larry Carter and Jeffrey Liberto. Plaintiff William S. Mills ("Plaintiff Mills" or "Plaintiff") brings this case as the administrator of the estate of Aaron Lorenzo Dorsey ("Mr. Dorsey"), who was killed while on the premises of Duke University Hospital in Durham, North Carolina, on March 13, 2010. In the present Motion to Dismiss, Defendants contend that Plaintiff's claims should be dismissed based on claim preclusion and/or issue preclusion, because all of Plaintiff's claims are based on underlying facts and contentions that have already been considered and dismissed in a prior state court action. For the reasons set out below, the Court recommends that Defendants' Motion be granted and that this action be dismissed.

I.    FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff Mills alleges in his Complaint that Mr. Dorsey was just outside of the front north entrance of Duke University Hospital on March 13, 2010, at approximately 1:00 a.m. and was either attempting to obtain medical care or was "panhandling."  He was allegedly not armed. Plaintiff alleges that Duke University Police Officers Carter and Liberto approached Mr. Dorsey, "at which time the Defendant Officers started to assault and employ the use of unreasonable and excessive force against the unarmed and helpless Plaintiff's Decedent."  (Compl. [Doc. #1] at 3.)  Plaintiff further alleges that without provocation or justification, Defendant Carter and/or Defendant Liberto shot Mr. Dorsey in his head and fatally wounded him.  Plaintiff claims that at the time, Mr. Dorsey did not present a threat of death or serious bodily injury to Defendant Carter or Defendant Liberto, or any other person.

Plaintiff asserts two claims for relief in his Complaint.  Plaintiff's First Claim is filed pursuant to 42 U.S.C. § 1983, and alleges that Defendants Carter and Liberto violated Mr. Dorsey's Fourth and Fourteenth Amendment rights by using excessive force against him. Plaintiff also alleges in the First Claim that Defendants were deliberately indifferent to Mr. Dorsey's serious medical needs in violation of his Fourteenth Amendment rights.  Plaintiff seeks damages, costs, and attorney's fees as relief.

Plaintiff's Second Claim is asserted against Defendant Duke University under 42 U.S.C. § 1983.  Plaintiff alleges that Defendant Duke developed and maintained policies or customs exhibiting deliberate indifference to persons, which caused the violation of Mr. Dorsey's constitutional rights.  These policies or customs allegedly included inadequately investigating

2

citizen complaints of police misconduct, and failing to adequately train and supervise its police

officers. As in the First Claim, Plaintiff seeks damages, costs, and attorney's fees as relief.

Defendants' Motion to Dismiss is based upon the alleged preclusive effect of a judgment

entered in a prior state court action filed by Plaintiff Mills. That state court action involved the

same parties as this federal court action. Plaintiff Mills, as administrator for Mr. Dorsey's estate,

sued Defendants Duke University, Larry Carter, and Jeffrey Liberto for the wrongful death of

Mr. Dorsey by negligence, assault and battery, and willful and wanton conduct. He sought

damages, attorney's fees, and costs as relief. The underlying facts are the same in the two

actions. The state court granted Defendants' Motion for Summary Judgment on all of Plaintiff

Mills' claims, and all of the claims were dismissed with prejudice. (State court Judgment [Doc.

#18-3].) That determination was affirmed by the North Carolina Court of Appeals. In its

opinion affirming summary judgment in favor of the Defendants, the North Carolina Court of

Appeals described the facts in that case as follows:

> Aaron Lorenzo Dorsey ("Mr. Dorsey") was shot and killed by a Duke
> University Police officer at approximately 1:00 a.m. on 13 March 2010, just
> outside the main entrance to Duke University Hospital in Durham ("the
> hospital"). When the shooting occurred, Preston Locklear was being treated for
> a serious injury in the intensive care unit of the hospital. A number of members
> of Preston Locklear's family ("the Locklear family") were at the hospital that
> morning visiting him. The Locklear family members included: Charles Brayboy,
> Krecia Ann Brayboy, Alena Hull, Christine Locklear, Debbie Locklear, Justin
> Locklear, Shawn Locklear, Lenora Locklear, and Billie Jo Locklear.
> In his deposition, Mondrez Pamplin ("Mr. Pamplin"), testified that he was
> a hospital security guard working in the front lobby of the hospital on the night
> shift between 12 and 13 March 2010. Shortly before 1:00 a.m. on 13 March 2010,
> a member of the Locklear family approached him to complain about a man
> panhandling near the entrance of the hospital. Mr. Pamplin went outside and saw
> Mr. Dorsey. He asked Mr. Dorsey if he was visiting someone in the hospital, and
> Mr. Dorsey replied that he was not. Mr. Pamplin then suggested to Mr. Dorsey

that he leave Duke University property. Mr. Dorsey did not leave, so Mr. Pamplin contacted Duke University Police to report Mr. Dorsey as a suspicious person. Duke University Police officers Larry Carter ("Officer Carter") and Jeffrey Liberto ("Officer Liberto") (together, "the officers") responded, arriving at the entrance of the hospital shortly after 1:00 a.m. Mr. Pamplin asked the officers to "check [Mr. Dorsey] out."

The officers approached Mr. Dorsey and asked for identification. Mr. Dorsey turned away from the officers and started walking away. At this point, according to the officers' testimony, Officer Liberto grabbed Mr. Dorsey and a struggle ensued. Officer Carter went to assist Officer Liberto, and Mr. Dorsey grabbed Officer Carter's holstered weapon and attempted to remove it from Officer Carter's holster. Officer Carter pressed down on Mr. Dorsey's hand or hands, attempting to prevent Mr. Dorsey from obtaining the weapon. Officer Carter was yelling: "He's got my gun. He's getting my gun." Officer Liberto let go of Mr. Dorsey and first began hitting Mr. Dorsey with his fists and then with his police baton. Officer Carter ended up struggling with Mr. Dorsey on the ground. Officer Liberto repeatedly asked if Mr. Dorsey had Officer Carter's gun, and both officers commanded Mr. Dorsey to let go of the weapon.

Some members of the Locklear family testified by deposition that they saw Mr. Dorsey grab Officer Carter's weapon and struggle with Officer Carter in an attempt to take that weapon. Other members of the Locklear family testified they could not see Mr. Dorsey's hands and, therefore, could not say if Mr. Dorsey was grabbing Officer Carter's weapon. However, they did hear someone yelling things like: "He's grabbed the gun[,]" "[l]et go; let go; let go," and "let go of the gun."

Mills v. Duke University, 759 S.E.2d 341, 342-43 (N.C. App. 2014).[1]  In their motion for

summary judgment in state court, Defendants alleged that the officers: (1) were "legally justified

in using reasonable force to protect the lives and safety of themselves and other innocent

bystanders[,]" (2) were "entitled to public official immunity[,]" (3) "acted reasonably at all times

and there [was] no negligence or other grounds for liability which can be imputed to Duke[,]"

(4) committed no acts justifying punitive damages, and (5) that "[Mr.] Dorsey's actions at the

---

[1] The Court takes judicial notice of the decision of the Court of Appeals, which was issued after the briefing of the present Motion to Dismiss.

time of the incident ... were the sole proximate cause of his death and constitute contributory negligence[.]" Id. at 343.

In considering the issue of summary judgment on appeal, the North Carolina Court of Appeals concluded that "[v]iewing the evidence in the light most favorable to Plaintiff, Plaintiff provided no evidence tending to show that Mr. Dorsey did not attempt to gain control of Officer Carter's weapon." Id. at 348-49. The Court of Appeals found that Officers Carter and Liberto were responding to Mr. Dorsey's unlawful and potentially deadly efforts to grab Officer Carter's weapon, and that the acts of the officers were not corrupt or malicious or outside of their duties. Id. Defendants in the present case now move to dismiss Plaintiff's claims in this Court, contending that Plaintiff's claims are barred by res judicata based on the prior state court determination.

II.     DISCUSSION

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, state court judgments are entitled to the "same full faith and credit" in federal courts as would be given in that state's courts. Thus, in considering the preclusive effect of a state court judgment, federal courts must apply the res judicata principles of the state that entered the putative preclusive judgment, which in this case is North Carolina. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982). In North Carolina, "a final judgment on the merits in a prior action in a court of competent jurisdiction precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Lawson v. Toney, 169 F. Supp. 2d 456, 462 (M.D.N.C. 2001) (citing Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)).

Thus, under North Carolina law, res judicata or claim preclusion requires: (1) a final judgment on the merits in an earlier lawsuit; (2) an identity of the cause of action in both cases; and (3) an identity of parties or their privies in both actions. Lawson, 169 F. Supp. 2d at 462 (citing Hogan v. Cone Mills Corp., 315 N.C. 127, 135, 337 S.E.2d 477, 482 (1985)).[2]

In this case, Plaintiff Mills argues only that the second element, an identity of the cause of action, is missing as to these actions. (Pl.'s Resp. [Doc. #21] at 4.) There being no argument to the contrary, the Court finds that the state court judgment is a final judgment on the merits and that there was an identity of the parties in both actions.

The doctrine of res judicata in North Carolina "precludes a second suit based on the same cause of action." Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 8, 591 S.E.2d 870, 880 (2004). "The doctrine prevents the relitigation of all matters . . . that were or should have been adjudicated in the prior action." Id. (quotation omitted). In determining whether claims are the same for res judicata purposes, North Carolina recognizes that "subsequent actions which attempt to proceed by asserting a new legal theory or by seeking a different remedy are prohibited under the principles of res judicata." Bockweg v. Anderson, 333 N.C. 486, 494, 428 S.E.2d 157, 163 (1993). Thus, in North Carolina all damages incurred as a result of a single wrong must be recovered in one lawsuit. Lawson, 169 F. Supp. 2d at 463. In City of Asheville v. State, 192 N.C. App. 1, 665 S.E.2d 103 (2008), the court found that the City was barred by

---

[2] A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be entertained on the ground of res judicata, and in considering such a motion, the court may take judicial notice of facts from a prior judicial opinion when the plaintiff does not dispute the factual accuracy of the record of the previous suit. Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000). In this case, Plaintiff Mills does not dispute the factual accuracy of the record of the prior state court proceeding, but argues that the outcome of that proceeding does not bar this federal action. The Court will therefore take judicial notice of the prior state court proceedings. See Andrews, 201 F.3d at 524.

res judicata from asserting that a particular session law violated "any provision of the North Carolina Constitution" because the City had, in an earlier action, asserted that the same session law violated two specific sections of the Constitution.  Id. at 16, 665 S.E.2d at 116.  The City could have asserted its present claim in the earlier action, but chose not to do so and was, thus, barred.

In the present action, it is clear that the single wrong Plaintiff asserts in both actions is the shooting of Mr. Dorsey.  Plaintiff Mills may not simply change his legal theory or seek a different remedy and file a second action based upon the same facts.  Moreover, Plaintiff has not explained why he could not have asserted his present section 1983 claims in his state court action.[3]  Plaintiff argues that he is asserting different legal theories with different standards of proof and different defenses.  However, the reasoning of Lawson shows that these differences do not serve as a basis to avoid res judicata.

In Lawson, the plaintiff had filed an earlier state court action before filing his federal action.  He alleged that he was assaulted while confined in the Durham County Detention Facility.  In the state action, the plaintiff had claimed that a detention facility guard was negligent in failing to move the plaintiff after hearing another inmate threaten the plaintiff, that the sheriff and his insurance company were liable under the doctrine of respondeat superior for the negligence of the guards, that the sheriff and his insurance company were liable for failing to

---

[3] The Court notes that North Carolina "utilizes a modified form of the transactional approach to determine whether claims are the same for res judicata purposes" and "[i]n keeping with this approach, North Carolina courts are reluctant to apply the bar of res judicata where the claim in question could not have been raised or fully adjudicated in the initial proceeding." Whitaker v. Nash-Rocky Mount Bd. of Educ., 474 F. App'x 912 (4th Cir. 2012).  However, in this case, there is no question that Plaintiff's § 1983 claim could have been raised and fully adjudicated in the state court litigation.

7

maintain adequate medical procedures for injured inmates and adequate classification procedures for weekend inmates, and that a guard was deliberately indifferent to the threat of violence against the plaintiff under section 1983. The state court dismissed all claims against the sheriff and his insurance company.

The plaintiff then filed a federal court action under section 1983 and state common law claiming that the guard was deliberately indifferent to the risk of assault, that the sheriff and the county demonstrated deliberate indifference to the risk of assault through their failed classification policy and/or practice or custom, and that the guards were negligent under North Carolina law which was imputed to the sheriff and his insurance company. On the sheriff's motion to dismiss on res judicata grounds, the federal court found that although the plaintiff did not raise a section 1983 claim against the sheriff in state court, his federal section 1983 claim against the sheriff "should be treated as identical to Plaintiff's state negligence claim for claim preclusion purposes." Lawson, 169 F. Supp. 2d at 464. The claims had different standards of proof, the state claim being based upon negligence and the federal claim upon deliberate indifference. But the claims were based upon the same operative facts and the plaintiff was merely asserting a new legal theory in the federal action. The same injury was alleged, which resulted from a single wrong. Therefore, the plaintiff was barred in the federal action from bringing his claim.

Plaintiff Mills has not attempted to distinguish Lawson, and the Court finds that the reasoning of the Lawson court is applicable to this action. Although Plaintiff has now changed

his legal theories, from negligence and assault to an excessive use of force and deliberate indifference, the claims are based on the same operative facts.

Plaintiff Mills relies upon inapposite cases to support his argument that res judicata does not apply. He cites cases in which the Fourth Circuit rejected the lower court's use of res judicata or collateral estoppel where the plaintiff had been previously convicted in a state criminal action of assaulting an officer or prison guard and then filed a federal civil rights action alleging the use of excessive force by the officer or guard in responding to the assault. See Ridley v. Leavitt, 631 F.2d 358 (4th Cir. 1980); Packer v. Hayes, 79 F. App'x 573 (4th Cir. 2003). However, because the state criminal action would necessarily involve different parties not in privity, these cases deal with collateral estoppel rather than res judicata. The question asked by the courts was whether the issue of excessive force was distinctly put in issue and directly determined in the criminal prosecution. It was not put in issue because the determination of whether excessive force was used by the officer or guard in response to the alleged assault was not resolved by the determination of whether the officer was assaulted. These cases do not support Plaintiff's argument.

In sum, all of Plaintiff Mills' claims are barred by res judicata. Defendants' Motion to Dismiss should be granted and this action should be dismissed.

III.    CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Motion to Dismiss [Doc. #17] be granted, and that this action be dismissed.

This, the 15th day of December, 2014.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge